IN THE COURT OF CRIMINAL APPEALS
OF TEXAS



NOS. AP-76,470 & AP-76,471



STATE OF TEXAS EX REL. PATRICIA R. LYKOS, Relator

v.

THE HONORABLE KEVIN FINE, Respondent




ON MOTION FOR LEAVE TO FILE PETITION FOR WRIT OF PROHIBITION
AND PETITION FOR WRIT OF MANDAMUS FROM CAUSE NO. 1170853
 IN THE 177TH DISTRICT COURT
HARRIS COUNTY



            Cochran, J., delivered the opinion of the Court in which Keller, P.J.,
Meyers, Johnson, Keasler, and Hervey, JJ., joined. Price and Womack, JJ.,
dissented.

OPINION

           The real party in interest in this writ of mandamus and prohibition action is John
Edward Green, Jr., the defendant in a pending capital murder case. Mr. Green has been
charged with the capital murder of Tina Vo, and the State has given notice of its intent to
seek the death penalty. The case has not gone to trial and no one knows what evidence the
State will offer at trial. No one knows whether a jury will convict Mr. Green of capital
murder if he is tried. No one knows whether Mr. Green will be sentenced to death by a jury
of his peers if that jury should find him guilty of capital murder. 
           Nonetheless, on April 2, 2010, Mr. Green filed an “Amended Motion to Declare
Article 37.071, § 2 of the Texas Code of Criminal Procedure Unconstitutional as Applied.” 
In that motion he asserts that Article 37.071, the Texas death-penalty sentencing statute, is
unconstitutional because “its application has created a substantial risk that innocent people
have been, and will be, convicted and executed.”


 On November 22, 2010, the State, acting
through the Harris County District Attorney as Relator, filed a Motion for Leave to File
Petition for Writ of Prohibition and Petition for Writ of Mandamus requesting this Court to
prohibit a pretrial evidentiary hearing on Mr. Green’s motion and to prohibit the trial judge
from granting such a motion before the State has had an opportunity to prove its charged
indictment before a jury. We denied the State’s motion on November 29, 2010 because no
such hearing had commenced in the district court and this Court could not know what
evidence might be offered at such a hearing. The State’s request was premature.


 We stated
that
it appears that much of the “evidence” respondent seems to want presented at
this hearing is not relevant to the question at issue. However, because we
cannot know whether relevant evidence will be presented, we find that
relator’s request that this Court order respondent to withdraw his order setting
a hearing is premature and currently without a basis.




           On December 6, 2010, the trial judge of the 177th District Court in Harris County
commenced an evidentiary hearing on Mr. Green’s motion, and several witnesses testified
to general data, issues and concerns about the death penalty in the United States and about
some specific aspects of the Texas death-penalty statutory scheme. That hearing continued
on December 7th. On that same day, the State filed a Motion for Reconsideration on the
Court’s Own Initiative and requested a stay in the proceedings. Finding that “[w]e now
know what witnesses are going to testify,” and based on that additional information, we
granted a stay of the proceedings in the trial court on December 7, 2010, to give all of the
interested parties and the trial judge an opportunity to respond to the State’s original request
for leave to file an application for writ of mandamus or prohibition. 
           Based upon the filings that we presently have before us,


 we conditionally grant the
State mandamus and prohibition relief because it has established both that (1) it has no other
adequate legal remedy; and (2) it has a “clear right to the relief sought” and the merits of its
legal position are “beyond dispute.”



A.       What is This Evidentiary Hearing About?
           Mr. Green’s amended motion seeks a pretrial ruling from the trial judge declaring
“Article 37.071, § 2 of the Texas Code of Criminal Procedure unconstitutional as applied
pursuant to the Eighth and Fourteenth Amendments of the United States Constitution, and
Article 1, Section 13 of the Texas Constitution.”


 Mr. Green points to a March 26, 2010
hearing in which the trial judge set out certain issues to be addressed in a pretrial evidentiary
hearing that the judge proposed:
The issue or issues that must be addressed are, first, whether or not it is a
violation of due process to execute an innocent defendant; second, it must be
determined whether or not the State of Texas under [art. 37.071] has, in fact,
executed an innocent person; and finally, if they have executed an innocent
person, does the defendant . . . have a basis to raise a claim based on these
facts.
These are indeed weighty public policy issues, greatly deserving of considerable debate by
the appropriate people, in the appropriate forum, and at the appropriate time. They are issues
that opponents of capital punishment have been raising since the mid-nineteenth century.


 
Certainly the Texas Legislature is an appropriate forum in which to debate these public
policy issues.


 That is also an appropriate forum to decide whether to abolish the death
penalty in Texas or to enact statutory or constitutional improvements to the current legislative
system. The Legislature will be meeting in the very near future and is fully competent to
address these issues. The trial judge correctly questioned whether a pretrial hearing in one
particular capital murder proceeding, subject to the presentations only of the two particular
parties before it–one criminal defendant and one prosecuting authority–is an appropriate
forum to fully develop and debate these general issues. And, implicit in the trial judge’s
question, is the legal inquiry whether those general public-policy issues can or should be
debated in a single criminal pretrial proceeding before the specific defendant is even placed
in jeopardy of being convicted or sentenced.
           In his amended motion, Mr. Green first argues that he states a pretrial Eighth
Amendment claim based upon whether the capital-punishment procedures or factors give rise
to a “substantial,” “unacceptable,” “significant,” or “intolerable” risk of an unreliable
outcome or infliction of harm.


 Indeed, every defendant who pleads “not guilty” runs some
risk of a “wrongful” conviction–the question is whether the entire criminal justice system is
so fraught with errors, incompetence, or fraud that one should not be subject to its actions. 
Mr. Green then asserts that he will set out, in both his pleading and his pretrial evidentiary
hearing, risk “factors that, in total or in combination, affect every person facing capital
charges in Texas who claims to be innocent.” This sounds remarkably like a facial attack
upon the Texas statutory death-penalty scheme. 
           1.        Is this a facial challenge?
           If Mr. Green is mounting a facial challenge to the Texas death-penalty scheme, then
he must prove that the system can never be constitutionally applied to any Texas defendant
charged with capital murder, no matter what the individual facts and circumstances of the
particular case. A party raising a facial challenge to the constitutionality of a statute must
demonstrate that the statute operates unconstitutionally in all of its applications.


 In a facial
challenge to a statute’s constitutionality, courts consider the statute only as it is written, rather
than how it operates in practice.


 Thus, if Mr. Green is challenging the constitutionality of
Article 37.071 as it is written, he may not offer evidence to show how it operates in actual
practice,


 as such evidence is irrelevant to a facial challenge, which asserts that there are no
factual circumstances under which the statute would be constitutional.


 That is, a facial
challenge to a statute is extremely difficult to prove as all courts presume that the Legislature
enacted a constitutional law and all courts must seek to uphold the facial constitutionality of
legislative enactments.


 
           In the context of capital punishment, the United States Supreme Court has already
stated that, “in assessing a punishment selected by a democratically elected legislature against
the constitutional measure, we presume its validity.”


 It bears noting that no provision of
the current Article 37.071 has been held unconstitutional by the Supreme Court or this Court,
although that statute has been attacked many times. 
           Furthermore, “the constitutionality of a statute is not to be determined in any case
unless such a determination is absolutely necessary to decide the case in which the issue is
raised.”


 Here, Mr. Green has not been convicted of anything, much less has he been
sentenced pursuant to Article 37.071, § 2.


 “We have held that it is incumbent upon an
accused to show that he was convicted or charged under that portion of the statute the
constitutionality of which he questions. We do not write declaratory judgments.”


 We
therefore must presume Mr. Green is not attempting to litigate the facial constitutionality of
Article 37.071, because then he would be seeking, in his own case, a prohibited declaratory
judgment concerning Article 37.071.
           2.        This is a very strange as-applied challenge.
           A litigant raising only an “as applied” challenge concedes the general constitutionality
of the statute, but asserts that the statute is unconstitutional as applied to his particular facts
and circumstances.


 Because a statute may be valid as applied to one set of facts and invalid
as applied to a different set of facts, a litigant must show that, in its operation, the challenged
statute was unconstitutionally applied to him; that it may be unconstitutional as to others is
not sufficient (or even relevant).


 
           An “as applied” challenge is brought during or after a trial on the merits, for it is only
then that the trial judge and reviewing courts have the particular facts and circumstances of
the case needed to determine whether the statute or law has been applied in an
unconstitutional manner.


 “‘Since [a contention that a statute is unconstitutional as applied]
requires a recourse to evidence, it cannot be properly raised by a pretrial motion to quash the
charging instrument.’”



           In the present case, however, Mr. Green is attempting to bring what he calls an “as
applied” challenge to Article 37.071, § 2, in a pretrial motion before any evidence in his case
has been heard. His amended motion makes reference to “sufficient risk factors inhering in
the application of Texas’ capital punishment statute that the statute creates a constitutionally
unacceptable risk of convicting and sentencing an innocent person to death.”


 He then sets
out various subsections of his general discussion:
“A. The number of exonerations in capital cases nationwide is steadily
increasing;
 
           “B.     Exonerations demonstrate there is a risk that innocent people have been
executed, and that post-trial review cannot be trusted to catch all errors;
 
           “C.     State governors and legislatures, Supreme Court Justices, and American Law
Institute have acknowledged the risk of executing innocent people;
 
           “D.     Five factors that produce a risk of wrongful conviction are peculiar to capital
cases;
                      1.        Crime clearance rates and pressure on the police;
                      2.        Publicity;
                      3.        Death qualification of prospective jurors;
                      4.        Fear of the death penalty in defendants and their defense team;
                      5.        The tendency of capital juries to consider punishment prior to
determining guilt;
 
           “E.      Seven factors based in Texas’ criminal procedure exacerbate the risks of
wrongful convictions created by the risk factors peculiar to capital cases;
                      1.        Inadequate compensation of jurors results in jury pools that are not
representative of a fair cross section of the community, diminishing the
protection afforded by the jury against overzealous prosecution;
                      2.        Eyewitness identification testimony is introduced which has not been
obtained through the use of safeguards established to reduce the risk of
mistaken identification;
                      3.        Confessions are introduced without having been obtained through the
use of procedures necessary to guard against false confession;
                      4.        Perjured testimony by informants who are paid or provided leniency in
their own cases is often introduced;
                      5.        The prosecution’s introduction of forensic evidence appears to lend
certainty to important forensic issues which is not justified and is
misleading;
                      6.        Pretrial discovery procedures are inadequate to safeguard against the
suppression of Brady evidence and the introduction of unreliable
evidence;
                      7.        Juries are selected in a racially discriminatory manner, thereby reducing
the thoroughness and accuracy of their deliberations;
 
           “F.      Two factors that are supposed to safeguard against the risk of wrongful
convictions are so flawed that they contribute to the risk of wrongful
convictions being sustained;
                      1.        State habeas proceedings;
                      2.        Clemency proceedings;
 
           “G.     Numerous Texas officials and agencies have expressed concern about many
of the risk factors discussed here but no one has yet taken any remedial action;
                      1.        Texas Forensic Commission;
                      2.        Governor Perry’s Criminal Justice Advisory Council;
                      3.        Texas Criminal Justice Integrity Unit;
                      4.        Timothy Cole Advisory Panel on Wrongful Convictions.”
 
           In a final section, Mr. Green then asserts that “the risk of wrongful conviction in
Texas is epitomized by the tale of two arson-murder cases.” And he proceeds to set out the
facts of those particular cases in detail. Of course, there is no allegation of any arson in Mr.
Green’s indictment, so the relevancy of information concerning other defendants in other,
wholly unrelated proceedings seems highly dubious for purposes of the present case. 
           These are all very important issues and they certainly deserve careful consideration 
in an appropriate forum. But Mr. Green has failed to explain their relevance in the pretrial 
setting except to say that he has pled not guilty and is claiming that he is innocent of the
charge, and therefore he is at risk of being wrongfully convicted and wrongfully sentenced
to death.


 But that is an entirely hypothetical issue. He has not been convicted of anything. 
He is asking Texas trial and appellate courts to entertain a purely hypothetical claim and
make an advisory ruling in a case that has not been litigated to any final resolution. Neither
trial nor appellate courts may entertain hypothetical claims. Nor is it sufficient to show that
a statute may operate unconstitutionally against the challenger or someone in a similar
position in another case.


 Courts must evaluate the statute as it has been applied in practice
against the particular challenger.


 And we have explicitly held that the risk that some other
possibly innocent person might be executed does not violate a third person’s–the
defendant’s–due process rights, nor does it violate the Eighth Amendment.



           The evidence presented during the two days of pretrial hearings in this case followed
the general outline of Mr. Green’s pleadings. That is, the testimony related to exonerations
across the United States, factors that applied to those nation-wide exonerations, and data
concerning exonerees in both capital and non-capital cases. Much, if not most, of this
testimony related to other jurisdictions, and the factors that these witnesses discussed were
not particular to Texas and sometimes wholly irrelevant to the Texas statutory scheme.
           Two of Mr. Green’s witnesses were defense investigators who testified to what they
believed were some of the operative facts concerning the underlying capital-murder charge
against Mr. Green. They said that the case involved an armed robbery and the shooting of
two Vietnamese women. They testified that the State’s case would presumably involve
eyewitness identification testimony, fingerprint evidence, and the testimony of informants. 
But we do not know this as the trial has not yet begun and the State has not yet had an
opportunity to present its evidence. If the State does present eyewitness testimony,
fingerprint evidence, and testimony from informants, Mr. Green would presumably be
entitled to rebut the accuracy and adequacy of that testimony as any defendant in any criminal
case is entitled to do. 
           In sum, Mr. Green appears to seek a pretrial ruling from the trial court judge that the
State is not entitled to proceed with its capital-murder indictment in this case because it is
within the realm of possibility that Mr. Green could be wrongfully convicted and wrongfully
sentenced to death if convicted. The question before us is whether Mr. Green is entitled,
under Texas law, to a pretrial hearing and a pretrial ruling that would deprive the State of the
opportunity to try its capital case and seek the death penalty against Mr. Green. Conversely,
is the State entitled to mandamus or prohibition relief to prevent such a pretrial hearing and
pretrial ruling?
B.       No Adequate Remedy at Law
           The State asserts that, if the trial judge should grant Mr. Green’s motion and prevent
the State from trying him for capital murder and seeking the death penalty, it has no adequate
remedy at law to correct what it contends is a legally erroneous and unauthorized procedure
and advisory ruling. It cannot appeal such a ruling because there is no statutory provision
to allow the State to appeal such a pretrial advisory ruling. Mr. Green, on the other hand,
contends that the State could appeal because the effect of the trial judge’s ruling would be
to dismiss the capital-murder indictment or some portion thereof.
           The State’s right to appeal is set out in Article 44.01.


 That statute permits the State
to appeal an order of a trial court in a criminal case if the order dismisses an indictment or
any portion of an indictment, arrests or modifies a judgment, grants a new trial, sustains a
claim of former jeopardy, grants a motion to suppress evidence, is issued for forensic DNA
evidence, or pronounces an illegal sentence.


 The only statutory provision that arguably
could apply to the present situation is an order that dismisses any portion of an indictment. 
But a capital-murder indictment when the State seeks the death penalty reads exactly the
same as a capital-murder indictment when the State does not seek the death penalty. That
is, the present indictment, like all capital-murder indictments, simply sets out the elements
of capital murder under Section 19.03 of the Texas Penal Code. The indictment in the
present case reads:
The duly organized Grand Jury of Harris County, Texas, presents in the
District Court of Harris County, Texas, that in Harris County, Texas, John
Edward Green, Jr., hereafter styled the Defendant, heretofore on or about June
8, 2008, did then and there unlawfully, while in the course of committing and
attempting to commit the ROBBERY of THIEN HUONG NGUYEN aka
TINA VO, intentionally cause the death of THIEN HUONG NGUYEN aka
TINA VO, by SHOOTING THIEN HUONG NGUYEN aka TINA VO with
a deadly weapon, namely, A FIREARM.

Mr. Green does not specify what portion, if any, of this indictment, he seeks to dismiss. Even
if the State did not seek the death penalty in this case, the indictment would read precisely
as it does. Supposing that the trial judge granted Mr. Green’s motion, there is nothing about
the indictment that he could, or should, eliminate. 
           In Morgan v. State,


 this Court dealt with a very similar situation. In that case, the 
State filed a pretrial motion asking the trial judge to rule that its DWI information, which
contained an enhancement paragraph alleging a prior DWI conviction, charged a Class A
misdemeanor.


 The defense aptly noted that the State’s motion was premature; it was not
entitled to any such pretrial ruling because it dealt only with “a determination on a
punishment issue.”


 Nonetheless, the trial judge made an advisory ruling that, if the
defendant were convicted, the punishment range would be for a Class B, not a Class A,
misdemeanor.


 The State attempted to appeal, and the court of appeals accepted jurisdiction,
but we concluded that the State was seeking an impermissible interlocutory appeal.


 The
trial judge’s ruling did not affect the face of the indictment, it merely advised how he
intended to proceed at punishment if the State obtained a conviction.


 We noted that “the
prosecution would proceed regardless of the trial court’s ruling.” Thus, the State was
attempting an interlocutory appeal, and, except for the appeal of a motion to suppress
evidence under certain circumstances, such interlocutory appeals are not statutorily permitted
under Article 44.01.



           In this case, it is the defense seeking a pretrial ruling on a possible punishment issue. 
Here, as in Morgan, the face of the indictment would not be affected by any pretrial ruling.
Thus, here, as in Morgan, the State could not appeal any such pretrial advisory ruling under
Article 44.01. 
           Mr. Green argues that the State could appeal the trial judge’s pretrial ruling in this
case under the “spirit” of Article 44.01 because it is “tantamount” to dismissing an
indictment. This is a position that we rejected in State v. Patrick,


 in which we held that the
State could not appeal the trial court’s non-statutory DNA order. “Although the State argues
that permitting an appeal of the trial court’s DNA order is consistent with the spirit of Article
44.01, the State does not claim that Article 44.01 specifically authorizes its appeal, and we
find nothing in that article authorizing an appeal here.”


 Although we held that the State
could not appeal such an order, it was entitled to mandamus relief because it had no adequate
remedy at law and it had a clear and indisputable right to relief.


 The same was true in State
ex rel. Rosenthal v. Poe,


 in which we held that the State had no right to appeal the trial
judge’s pretrial ruling prospectively allowing a television camera in the jury deliberation
room, but the State was entitled to mandamus relief because it had an indisputable right to
relief.


 Article 44.01 does not have penumbras or “spirits.” The statute either does or does
not specifically authorize a State’s appeal. It does not authorize the State to appeal from a
pretrial ruling on a possible punishment issue that fails to dismiss any part of the actual
indictment.


 
           Mr. Green also argues that Article 44.01 should be construed to include the State’s
right to appeal a pretrial ruling that prohibits the State from seeking the death penalty in a
capital murder case because several federal courts have construed the federal statute
concerning government appeals to permit the appeal of orders in which a district court has
stricken a death-penalty notice. He cites, inter alia, United States v. Bass,


 in which the
Sixth Circuit held that the government could appeal the district court’s pre-trial order
dismissing the government’s death-penalty notice based upon its refusal to provide certain
discovery to the defendant concerning his claim of selective prosecution.


 The Sixth Circuit
stated that it had jurisdiction under 18 U.S.C. § 3731 over final pretrial discovery orders and
thus it could entertain the government’s appeal of a pretrial discovery order.


 Indeed, in
United States v. Wilson,


 the United States Supreme Court held that, in enacting 18 U.S.C.
§ 3731, Congress intended to remove all barriers to a government appeal in a criminal case
other than those imposed by the Constitution.


 We have never said the same of the Texas
statute governing appeals by the State.


 Instead, in Texas, appeals by either the State or the
defendant in a criminal case are permitted only when they are specifically authorized by
statute.


 In Texas, “[t]he standard for determining jurisdiction [of an appellate court] is not
whether the appeal is precluded by law, but whether the appeal is authorized by law.”



           Because Article 44.01 does not provide for an appeal by the State of an interlocutory
pretrial ruling preventing the State from pursuing a capital-murder conviction and sentence
of death, the State has no adequate remedy at law concerning the resolution of Mr. Green’s
amended motion. A writ of mandamus or prohibition is, therefore, an appropriate vehicle
to review the propriety of Mr. Green’s pretrial motion and the trial judge’s evidentiary
hearing.
C.       A Clear Right to Relief
           Mr. Green argues that the State cannot prosecute him for capital murder and seek the
death penalty in this case because the application of Article 37.071, § 2, “has created a
substantial risk that innocent people have been, and will be convicted and executed.” Mr.
Green asserts that he is innocent, but apparently assumes that, if he goes to trial, he would
be both wrongfully convicted and sentenced to death. These assumptions are simply not
warranted before a jury has considered the evidence in the present case and rendered a
verdict. As noted above, an “as applied” challenge to the constitutionality of a statute
requires the challenger to demonstrate that the statute has operated unconstitutionally when
applied to his particular circumstances. Because a statute may be valid as applied to one set
of facts and invalid as applied to another, it is incumbent upon the challenger to first show
that, in its operation, the statute is unconstitutional as to him in his situation; that it may be
unconstitutional as to others is not sufficient.


 Therefore, any court considering an “as
applied” challenge to a statute must look at the challenger’s conduct alone to determine
whether the statute operated unconstitutionally.


 
           All courts must heed the most recent pronouncement by the United States Supreme
Court in Baze v. Rees: “We begin with the principle, settled by Gregg, that capital
punishment is constitutional. . . . It necessarily follows that there must be a means of
carrying it out.”


 In Baze, the Supreme Court held that, in the context of the Eighth
Amendment, a challenged execution procedure must create a “substantial risk of serious
harm,” or an “objectively intolerable risk of harm” before it could rise to a constitutional
violation. The level of risk that is “objectively intolerable” would normally be decided by
the public, acting through its legislative enactments; a “possible” or “potential” risk does not
suffice to violate the federal constitution.



           Mr. Green asserts that no jury can decide whether he is guilty of capital murder and
subject to the death penalty because it is possible that an innocent person, perhaps in Texas,
perhaps in some other jurisdiction, has been wrongly executed and therefore Mr. Green is
subject to the possibility of being wrongfully convicted and wrongfully executed. The
Supreme Court has never required human infallibility in its criminal laws or procedures. In
Herrera v. Collins,


 a death-penalty case arising out of Texas, the Supreme Court reaffirmed
that “[d]ue process does not require every conceivable step be taken, at whatever cost, to
eliminate the possibility of convicting an innocent person. To conclude otherwise would all
but paralyze our system for enforcement of the criminal law.”


 In Herrera the Supreme
Court recognized that the constitutional protections in the Texas capital-punishment statutory
scheme “have the effect of ensuring against the risk of convicting an innocent person.”


 Of
course, to the extent that the statutory scheme has not worked fairly or accurately in a
particular case, a person who claims that he has been wrongly convicted or sentenced has the
right to multiple layers of appellate and collateral review in multiple courts. But one does
not put the cart before the horse: a defendant has no claim of wrongful conviction or
wrongful sentencing before he has even gone to trial. 
           Even more recently, the Supreme Court has rebuffed a challenge to the death-penalty
laws of Kansas based on an argument not dissimilar to that of Mr. Green. In Kansas v.
Marsh,


 the Supreme Court reversed a decision by the Kansas Supreme Court which had
held that the death-penalty statute in Kansas violated the Eighth and Fourteenth Amendments 
because it required imposition of the death penalty if the jury unanimously found that the
statutory aggravating circumstances were not outweighed by mitigating circumstances. 


 The
United States Supreme Court disagreed. The Kansas death-penalty statute was constitutional
because it rationally narrowed the class of death-eligible defendants; it allowed imposition
of the death penalty only if (1) the defendant was convicted of capital murder; (2) the state
could prove at a separate sentencing hearing the existence of one or more aggravating
circumstances; (3) the jury was permitted to consider any mitigating evidence relevant to the
sentencing determination; and (4) the state proved beyond a reasonable doubt that the
aggravating circumstances were not outweighed by mitigating circumstances.


 In Marsh,
the Supreme Court once again pointed approvingly to the Texas death-penalty statutory
scheme as a constitutionally permissible one because it “1) rationally narrow[s] the class of
death-eligible defendants; and (2) permit[s] a jury to render a reasoned, individualized
sentencing determination based on a death-eligible defendant’s record, personal
characteristics, and the circumstances of his crime. So long as a state system satisfies these
requirements, our precedents establish that a State enjoys a range of discretion in imposing
the death penalty, including the manner in which aggravating and mitigating circumstances
are to be weighed.”



           The majority in Marsh rejected the very same contention that Mr. Green makes in this
case, namely that because some death-row inmates have been exonerated by DNA evidence
or because it is possible that some innocent person may have been wrongfully executed a
state’s statutory death-penalty scheme may be unconstitutional:
[T]he availability of DNA testing, and the questions it might raise about the
accuracy of guilt-phase determinations in capital cases, is simply irrelevant to
the question before the Court today, namely, the constitutionality of Kansas’
capital sentencing system. Accordingly, the accuracy of the dissent’s factual
claim that DNA testing has established the “innocence” of numerous convicted
persons under death sentences–and the incendiary debate it invokes–is beyond
the scope of this opinion.



The Supreme Court then went on to explain why it does not–and by implication, other courts
do not–determine the constitutionality of the death penalty on this basis:
[These] criticisms against the death penalty are ultimately a call for resolving
all legal disputes in capital cases by adopting the outcome that makes the death
penalty more difficult to impose. While such a bright-line rule may be easily
applied, it has no basis in law. Indeed, the logical consequence of the dissent’s
argument is that the death penalty can only be just in a system that does not
permit error. Because the criminal justice system does not operate perfectly,
abolition of the death penalty is the only answer to the moral dilemma the
dissent poses. This Court, however, does not sit as a moral authority. Our
precedents do not prohibit the States from authorizing the death penalty, even
in our imperfect system. And those precedents do not empower this Court to
chip away at the States’ prerogatives to do so on the grounds the dissent
invokes today.




Quite simply, the criticisms concerning the risk or potential for a wrongful execution under
any legislatively enacted death-penalty scheme raised by the dissent in Marsh and by Mr.
Green are important moral and public policy questions suitable for intense and open debate
by legislative policy makers, not by courts considering only the constitutionality of a legal
system, not its absolute perfection.


 Neither trial judges nor judges on this Court sit as a
moral authority over the appropriateness of the death penalty. We can determine only
whether it has been constitutionally imposed by a jury after a specific conviction and
sentence.
           And that brings us back to the ostensible purpose of Mr. Green’s evidentiary hearing. 
He is attempting to offer generalized evidence and data about other defendants in other cases
unrelated to the specific evidence of his guilt or innocence or his appropriate sentence, if any,
should he be found guilty of capital murder. This evidence is, as the United States Supreme
Court stated, “irrelevant.”


 
           We must take Mr. Green at his word that he is mounting an “as applied” challenge to
the operation of the Texas capital-murder statutes in his specific and particular case. That
challenge can only be made when and if he has been convicted and sentenced to death. And
it can be made only upon a showing that the Texas sentencing scheme has operated in an
unconstitutional manner to deprive him of a constitutionally fair trial. A trial on the merits
is “the main event” in our American system of justice in which the prosecution and defense
present evidence and do battle to reach a presumptively accurate and reliable result in each
particular case.


 At that trial on the merits “[i]f a criminal defendant thinks that an action
of the state trial court is about to deprive him of a federal constitutional right there is every
reason for his following state procedure in making known his objection.”


 Mr. Green has
cited no state law or state procedure that permits a pretrial evidentiary hearing to determine
the “as applied” constitutionality of a state penal law or state criminal procedural statute, nor
are we able to find one. He is, in truth, seeking a declaratory judgment. Mr. Green argues
that the effect of his motion, if successful, is “tantamount to dismissing an indictment or any
portion of an indictment.” But Texas law does not permit a defendant in a criminal case to
attack the sufficiency or adequacy of an indictment by evidence beyond the four-corners of
that indictment.


 
           Because there is no basis under Texas law to conduct a pretrial evidentiary hearing
to determine the “as applied” constitutionality of a state penal or criminal procedural statute,
we conclude that the trial judge does not have legal authority to conduct any such pretrial
evidentiary hearing and make any such pretrial declaratory judgment. He is acting beyond
the scope of his lawful authority. Therefore, the State has demonstrated a clear right to relief. 
We conditionally grant mandamus and prohibition relief and, if he does not do so himself, 
will order the trial judge to dismiss Mr. Green’s “Amended Motion to Declare Article
37.071, § 2 of the Texas Code of Criminal Procedure Unconstitutional As Applied” as
requesting an unauthorized declaratory judgment.
Delivered: January 12, 2011
Publish